IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TERRY HARRIS, | : | |
| --- | --- | --- |
| | : | Civil No. 1:08-cv-843 |
| Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Smyser) |
| HERSHEY MEDICAL | : | |
| CENTER et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Before the Court are three motions to dismiss (Doc. Nos. 30, 36, 65), Magistrate Judge J. Andrew Smyser's Report and Recommendation ("R&R") recommending that the motions be granted in part (Doc. No. 70), Plaintiff Terry Harris's ("Harris") objections to the R&R (Doc. No. 74), and a response to Harris's objections filed by Defendant Deborah Cook (captioned as "Nurse Deb") (Doc. No. 75). For the reasons that follow, the Court will adopt the R&R in part and remand the case to Judge Smyser for further proceedings.

### I. BACKGROUND

**A. Factual and Procedural Background**

In the interest of economy, the Court incorporates by reference the uncontested background of the case as presented in the R&R. (Doc. No. 70 at 2-5.) The necessary background for purposes of this memorandum is set out as follows in Judge Smyser's R&R:

> The plaintiff alleges that on December 5, 2007, unknown medical personnel from the Hershey Medical Center Orthopaedic Department faxed forged and false medical documents to defendant Coolbaugh of the Adams County Domestic Relations Office. One of the documents stated that the plaintiff could not work, but the other two documents stated that the plaintiff could do sedentary work. On December 6, 2007, the documents were introduced as evidence

against the plaintiff at a child support contempt hearing. Judge Bingham believed that the plaintiff had been lying about his inability to work and found the plaintiff to be in contempt of court.

The plaintiff was handcuffed, shackled and transported to the ACACC by the Adams County Sheriff's Department. The plaintiff's walking cane was confiscated from him. The plaintiff slipped on ice on the sidewalk leading to the intake entrance of the ACACC. As the plaintiff was lying on the ground, the Sheriff's Deputy called for assistance. Defendant Keefer, defendant Nurse Deb and other prison officers arrived. The plaintiff told defendant Nurse Deb that he was in extreme pain, that he had reinjured his back and right leg and that he had also injured his neck and head. Defendant Nurse Deb was familiar with the plaintiff's preexisting back and leg injury based on the plaintiff's prior incarceration at the ACACC.

Defendant Nurse Deb told the officers to lift the plaintiff and get him inside. After several unsuccessful attempts were made to lift the plaintiff, defendant Keefer became agitated, yelled at the plaintiff to get up and kicked the plaintiff in the leg. Neither defendant Nurse Deb nor defendant John Doe Sheriff's Deputy nor any of the other people at the scene tried to stop defendant Keefer from kicking the plaintiff. Prison officers grabbed the plaintiff and lifted him into a wheelchair. They took him to a medical examining room.

The plaintiff complained about being assaulted by defendant Keefer, but [Doctor Young] told him to stop. The plaintiff told the doctor about his preexisting injuries, his ongoing physical therapy and his new injuries. The plaintiff also told the doctor that he was in extreme pain. The doctor gave the plaintiff a "once over naked eye examination" and said that the plaintiff was alright. The plaintiff was taken in a wheelchair to a holding cell and then to the classification housing unit. Even though he kept complaining of extreme pain, the plaintiff was not given any pain medication.

The plaintiff's fiancee paid the plaintiff's child support arrears, and, at about 10:00 p.m, the plaintiff was released from the ACACC. The plaintiff went straight from the ACACC to the Gettysburg Hospital Emergency Room. At the Emergency Room, the plaintiff was given X-Rays, scans and a shot for his pain. He was told to see his chief care giver as soon as possible.

The plaintiff was not able to get an appointment with his chief care giver - Dr. Mark Knaub of the Hershey Medical Center - until

2

> January 14, 2008. At that appointment, Dr. Knaub apologized for the false medical documents that were sent to the Adams County Domestic Relations Office and he told the plaintiff that he would write a letter to Domestic Relations explaining the error. Dr. Knaub did write such a letter. The plaintiff introduced the letter written by Dr. Knaub at a hearing to try to have his child support obligation reduced and to have a stay placed on his duty to pay until after his social security appeal is decided. The plaintiff's requests were denied. The plaintiff claims that he can not work and that the Domestic Relations Office is denying him due process by not waiting for the outcome of his social security appeal.

**B. Standard of Review**

The Magistrate Act, 28 U.S.C. § 636, and Fed. R. Civ. P. 72(b), provide that any party may file written objections to a magistrate's proposed findings and recommendations. In deciding whether to accept, reject or modify the R&R, the Court is to make a de novo determination of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1).

In analyzing a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The plaintiff still must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Additionally, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. While these requirements still apply, a pro se complaint should be liberally construed no matter how inartfully pleaded. See Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004).

**II.    DISCUSSION**

To start, Harris does not appear to dispute Judge Smyser's recommendation that the Court dismiss Defendants: Adams County Sheriff Department, Adams County Domestic Relations Office, Adams County Adult Correctional Complex, Sgt. Heinzelman, and Warden Clark. (See Doc. No. 70 at 17.) Further, no objections were filed disputing Judge Smyser's determination that claims should not be dismissed against Defendant Keefer and yet unnamed prison officials for an alleged assault on Harris and failure to intervene in the assault. Having reviewed the record and legal authority cited in the report and recommendation, the Court will adopt Judge Smyser's recommendation on these issues.

Harris's objections, which lack a brief in support required by Middle District Local Rules 72.2 and 72.3, relate solely to Magistrate Judge Smyser's recommendation for dismissal of the amended complaint as to Defendants: Emily Coolbaugh ("Coolbaugh"), Jane Doe Domestic Relations ("Doe"), Nurse Deb, and Doctor William Young ("Dr. Young").

**A. Coolbaugh and Doe**

Judge Smyser found that the amended complaint lacked sufficient allegations to sustain any claims against Doe and Coolbaugh, employees at the Adams County Domestic Relations Office. (Doc. No. 70 at 15.) After reviewing the amended complaint, the Court agrees. Harris alleges that medical personnel from the Hershey Medical Department faxed false medical documents to Coolbaugh at the domestic relations office stating that he could do sedentary work. (Doc. No. 9 ¶ 15.) These documents were then introduced as evidence against him at his child support hearing, causing the judge to find him in contempt. (Id. ¶ 16.) After obtaining a note from his doctor explaining the error (Id. ¶ 32), Harris was granted a hearing on the issue of obtaining a stay on his child support pending a determination of a "social security appeal" (Id. ¶

4

33).  He introduced the note to Domestic Relations and the Judge, but the stay was denied.  (Id.) Because of this denial, Harris alleges the legal conclusion that Coolbaugh and Doe are denying him due process by not waiting for the outcome of his social security appeal before proceeding with the child support proceedings.  (Id. ¶ 34; 46.)

In his objections, Harris does not appear to dispute the conclusion that the allegations in his amended complaint were insufficient as to these Defendants.  Rather, Harris solely argues that the Defendants should not be dismissed because they "allowed Plaintiff to be falsely incarcerated, they have litigated my case different than anyone else under my circumstances, and or the same, due to prior lawsuits against . . . Adams County officials, they deliberately failed to submit paper work to the court of my innocence, knowing I would be incarcerated."  (Doc. No. 74.)  These allegations are new; they do not appear in the amended complaint and, in fact, seemingly contradict the few allegations that were made against Doe and Coolbaugh set out above.  As such, the Court finds that the allegations in the complaint do not set out a valid claim for relief against Doe or Coolbaugh and will adopt Judge Smyer's recommendation that the claims be dismissed.  Further, despite Harris's obfuscation, it is clear that he is truly seeking relief from the rulings made by the judge in his ongoing child-support proceedings and not any action taken by his caseworkers in the Adams County Domestic Relations Office.  As the Court has observed in a prior order, even if Harris properly submitted the claim, this is likely an inappropriate forum for such relief.  (Doc. No. 53 at 5.)

### B. Nurse Deb and Dr. Young

Finding that "plaintiff did not file a brief in opposition," Judge Smyser deemed Nurse Deb's motion to dismiss unopposed pursuant to Local Rule 7.6 and recommended that the

5

motion be granted without extended review. (Doc. No. 70 at 15.) Harris objects to this determination, arguing that he did oppose the motion. (Doc. No. 74.)

Harris did indeed file a response to Nurse Deb's motion (Doc. No. 61), though it was untimely (See Doc. No. 55) and, even given Harris's pro se status, also completely insufficient. Harris's response consists of numbered lines—these numbers correspond to paragraphs in Nurse Deb's brief in support—stating that the corresponding paragraph in Nurse Deb's brief is either "admitted," "denied," or "arguable." (See Doc. No. 61.) Unfortunately, Harris never explains why a paragraph is denied or arguable, which renders the response all but useless to the Court when considering the issues before it.[1]

Despite the above, it is clear that even if the motion to dismiss is deemed unopposed, a court is typically required to evaluate whether the complaint failed to state a claim upon which relief can be granted as required by Rule 12(b)(6). See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); see also Husick v. Allegheny County, 304 Fed. App'x 977, 979 (3d Cir. 2008) ("In *Stackhouse*, we made clear our disfavor of dismissals under Rule 12(b)(6) for purposes of sanctioning a litigant and held that a Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying complaint notwithstanding local rules regarding the granting of unopposed motions."). As such, the Court will review the arguments raised by Nurse Deb in favor of dismissal of the amended complaint. The Court will also review Dr. Young's arguments in favor of dismissal in this section, as the allegations and claims against Dr. Young and Nurse Deb overlap.

---

[1] Harris has utilized this method in numerous briefs he has filed with this Court, though some have been more responsive than others. If Harris intends to continue in this fashion, he would be well advised to submit fully responsive briefs that address the arguments made by the opposing party and elaborate fully on why an assertion is "denied" or "arguable."

The allegations against Nurse Deb and Dr. Young are sparse. After being held in contempt and taken to prison, Harris slipped and fell in the parking lot of the prison. (Doc. No. 9 ¶ 20.) One of the sheriff deputies called for assistance and Nurse Deb arrived with other prison officers. (Id. ¶ 21.) Harris informed Nurse Deb that he was in extreme pain and she told the prison officers that they had to get Harris into a wheelchair. (Id. ¶ 23.) After the officers were not able to lift Harris at first, Defendant Keefer allegedly became agitated and started kicking Harris in front of Nurse Deb. (Id.) Despite this, Nurse Deb made no move to try and stop the alleged kicking. (Id. ¶ 24.) After this, Harris was wheeled into an examination room with Defendant Dr. Young, who proceeded to examine him. (Id. ¶ 25.) Harris states that he personally informed Dr. Young about the assault, his pre-existing injuries, and the extreme pain, but he alleges that Nurse Deb failed to tell Dr. Young this history because of "discrimination against Plaintiff for filing suit against Primecare Medical Inc. in the past . . . ." (Id. ¶¶ 27; 43.) Dr. Young gave Harris a "once-over naked eye examination" and was sent to a holding cell without pain medication. (Id. ¶ 28.) Harris was released from prison later that night and went to the emergency room, where, after x-rays and scans were taken, he was given a shot for pain and told to go see his care-giver about his on-going therapy. (Id. ¶ 30.)

### 1. Eighth Amendment - Medical Treatment

Harris claims that Nurse Deb and Dr. Young violated his Eighth and Fourteenth Amendment rights in the medical care they provided him while he was in custody. As Nurse Deb points out in her response to Lowe's objections, it is not clear from the complaint whether Harris was a pre-trial detainee protected by the Due Process Clause or a convicted and sentenced prisoner protected by the Eighth Amendment. (Doc. No. 75 at 6 n.2.); see also Hubbard v.

Taylor, 399 F.3d 150 (3d Cir. 2005). The Eighth Amendment protects prisoners after an adjudication of guilt, but also informs the analysis with regard to pre-trial detainees because they are entitled to at least as much protection as a convicted prisoner under the Eighth Amendment. A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 584 (3d Cir. 2004). Under the Eighth Amendment, prisoners are protected from deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "[T]he Estelle 'deliberate indifference to serious medical needs' standard is clearly met when a doctor is 'intentionally inflicting pain on a prisoner." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)). There are limits on this claim, however, in that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle. 429 U.S. at 106. Therefore, deliberate indifference "has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Farmer v. Brennan, 511 U.S. 825, 842 (1994)). Additionally, mere disagreement as to the proper medical treatment is also insufficient to state a claim. Spruill, 372 F.3d at 235.

The Court will not adopt the recommendation to dismiss this claim. It is true that the allegations made against Nurse Deb and Dr. Young are sparse, but after carefully considering Harris's amended complaint and the arguments made by Nurse Deb and Dr. Young, the Court is not persuaded that the claim should be dismissed at this time. Liberally construing Harris's allegations, they are sufficient to state a valid claim for deliberate indifference. Despite Nurse

8

Deb's characterization of his allegations in reference to a serious medical need as "general references," the Court finds that Harris has alleged that he had a serious medical need: chronic leg and back pain for which he had been previously prescribed certain therapy and medication and caused him to walk with a cane. See Spruill, 372 F.3d at 236 ("[The Plaintiff's] back condition itself has allegedly required significant and continuous medication, and has caused him excruciating pain . . . The extreme pain and real possibility of permanent injury could qualify Spruill's condition as a serious medical need . . . at the motion-to-dismiss-stage . . . ."). Harris also alleges that Nurse Deb was aware of this medical history and his conditions from his prior interactions with her, that he informed Dr. Young about his conditions and the extreme pain he was experiencing, and that he was not given pain medication despite repeated complaints about extreme pain. Additionally, Harris has alleged that Nurse Deb and Dr. Young acted purposely to cause him pain because of previous problems he had with their employer, PrimeCare Medical (discussed further below). (Doc. No. 9 ¶ 43 at 11-12.) Given these allegations and Harris's pro se status, the Court cannot find that the amended complaint fails "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" such that dismissal would be appropriate on these claims. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). The Court does not suggest, however, that Harris will be able to sustain his claim at summary judgment: he was not denied medical treatment in this case, he was quickly examined after his fall, and it seems unlikely from the allegations that he will be able to show that either Nurse Deb or Dr. Young acted with a conscious disregard for a serious risk. Nevertheless, these determinations—particularly regarding the Defendants' states of mind—should not be made from the face of a pro se complaint; the claim will not be dismissed at this early stage of the case

under these circumstances.

### 2. Failure to Intervene

While taking no part in the alleged assault, Harris asserts that Nurse Deb violated his constitutional rights by failing to intervene in the alleged assault against him by Defendant Keefer. Nurse Deb argues that, as a nurse, she had no duty to intervene into the alleged assault under these circumstances. (Doc. No. 75 at 10-11.)

The Third Circuit has held that a correction officer's failure to intervene in a beating can be the basis of liability under § 1983 if the corrections officer ignored a reasonable and realistic opportunity to intervene in the excessive force. Smith v Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). In extending failure to intervene liability to correction's officers, the Third Circuit relied partly on precedent involving police officers and stated: "[b]oth [police and corrections officers] are law enforcement officers, both are sworn to uphold the law, and both are authorized to use force (even deadly force) toward that end." Id. at 651. The Third Circuit has since held, albeit in an unpublished opinion, that nurses do not have a duty to intervene under Smith. Ali v. McAnany, 262 Fed App'x 443, 446 (3d Cir. 2008) ("The claim against Hoffman [a prison nurse] is also subject to dismissal because she is not a corrections officer and thus did not have a duty to intervene . . . .") Considering this authority, the Court finds Nurse Deb's argument persuasive. Accordingly, the Court will adopt Judge Smyser's recommendation and the failure to intervene claim will be dismissed.

### 3. State Law Immunity and Certificate of Merit Claims

Nurse Deb argues that state law claims against her should also be dismissed because she is immune under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Con.

Stat. § 8501 *et seq,* and also because Harris failed to file a certificate of merit in support of his medical negligence claim pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a). (Doc. No. 75 at 12-13.) Local agencies in Pennsylvania are given broad immunity to state-law claims under the PSTCA, qualified only by eight inapplicable exceptions. See 42 Pa. Cons. Stat. § 8541; see also Hernandez v. York County, 288 Fed App'x 781, 782 (3d Cir. 2008) (holding that a county prison immune to inmate's state law claims under PSTCA as a local agency). Employees of these agencies generally gain the same immunity under the act: "a municipal employee 'is liable for civil damages on account of any injury to a person or property only to the same extent as his employing local agency.'" Bright v. Westmoreland County, 443 F.3d 276, 287 (3d Cir. 2006); 42 Pa. Cons. Stat. § 8545. For public employees, an additional exception applies for actions that constitute "a crime, actual fraud, actual malice or willful misconduct . . . .Willful misconduct in this context has the same meaning as the term 'intentional tort.'" Bright, 443 F.3d at 287. Further, independent contractors of the local agency are not covered by this immunity. 42 Pa. Cons. Stat. § 8501; see also Francis ex rel. Estate of Francis v. Northumberland County, No. 4:06-CV-2297, 2009 WL 1988960, *7-8 (M.D. Pa. 2009) (holding that a doctor providing psychiatric services at county prison was an independent contractor and did not qualify for PSTCA immunity).

      The Court does not believe the record is clear enough at this stage of the case to reliably determine whether Nurse Deb was an independent contractor or employee, a fact intensive inquiry. See Francis, 2009 WL 1988960 at *9 (citing Higsby Development, Inc. v. Sartor, 954

A.2d 77, 85 (Pa. Commw. Ct. 2008)).[2] Further, the mere fact that Harris alleges Nurse Deb acted under color of law does not foreclose the possibility that Nurse Deb is an independent contractor for purposes of PSTCA immunity. See id.

Despite the inability to make an immunity determination at this stage of the case, any potential state law claim for medical negligence against Nurse Deb must be dismissed for failure to file a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a), which provides in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> 1. an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> 2. the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> 3. expert testimony of an appropriate licensed professional is

---

[2] Some of the factors considered include: "who controls the manner of work to be performed; the responsibility for the result; the terms of agreement between the parties; the nature of the work or occupation; the skill required for the performance; whether one is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer; and whether there is the right to terminate the employment at any time." Helsel v. Complete Care Services, L.P., 797 A.2d 1051, 1055 (Pa. Commw. Ct. 2002) (quoting Hammermill Paper Co. v. Rust Engineering Co., 243 A.2d 389, 392 (Pa. 1968)).

unnecessary for prosecution of the claim. . . .

Pa. R. Civ. P. 1042.3(a). This rule has been found applicable in federal court, see, e.g., Iwanejko v. Cohen & Grigsby, P.C., 249 Fed. Appx. 939, 944 (3d Cir. 2007), and applying the rule to this action would have required Harris to file a certificate of merit within 60 days of filing the complaint. Harris has not yet filed a certificate of merit as to Nurse Deb. The certificate of merit requirement is enforced through Rule 1042.7, providing for dismissal of the claim by judgment of non pros in state court, which is is effectively the same as a dismissal without prejudice. Stroud v. Abington Memorial Hosp., 546 F. Supp. 2d 238, 250 (E.D. Pa. 2008). Recent amendments to the certificate of merit rules require that a defendant file notice of its intention to seek a judgment of non pros before dismissal can be granted, but it has been recognized that this notice can be provided by a motion to dismiss in the context of federal motion practice. Pa. R. Civ. P. 1042.6; Booker v. United States, No. 1:CV-07-1960, 2009 WL 90129, *4 (M.D. Pa. 2009). In response to Nurse Debs motion to dismiss, Harris did not file a certificate of merit or seek an extension of time to do so. As Nurse Deb correctly argues and the rule plainly states, Harris's pro se status does not excuse him from the certificate of merit requirement.

### 5. Unaddressed Claims

Though moving to dismiss the amended complaint in its entirety, there are allegations in the amended complaint which raise other potential claims that were not addressed by the parties in their motions to dismiss. For instance, Harris asserts in both his amended complaint and his objections to the R&R that Nurse Deb and Dr. Young were retaliating against him because he had previously filed suit against their employer, PrimeCare Medical, Inc. (See Doc. No. 9 ¶ 43 at 11-12; Doc. No. 74 ¶ 19.) Though Harris did not specifically articulate it, these allegations

13

raise a potential First Amendment retaliation claim. See e.g., Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006) ("In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."). The Court declines to evaluate this potential claim further on its own initiative and with no briefing from the parties.

### 6. Punitive Damages

The Court will also deny Nurse Deb's motion to dismiss Harris's claim for punitive damages largely for the reasons discussed above in regard to Harris's deliberate indifference claim. The allegations are facially sufficient to support potential punitive damages and discovery is needed to determine whether Harris can legitimately sustain these allegations. See e.g., LaMaze v. Vidov Trucking, Inc., No. 09-158, 2009 WL 650371, *4 (E.D. Pa. 2009).

## III. CONCLUSION

Based on the foregoing, the Court will adopt Judge Smyser's R&R in part. An order consistent with this memorandum will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY HARRIS, :
: Civil No. 1:08-cv-843
Plaintiff :
: (Chief Judge Kane)
v. :
: (Magistrate Judge Smyser)
HERSHEY MEDICAL :
CENTER et al., :
:
Defendants :

## ORDER

**AND NOW**, this 27th day of August 2009, having reviewed the pending motions to dismiss (Doc. Nos. 30, 36, 65), Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. No. 70) and Plaintiff Terry Harris' objections thereto (Doc. No. 74), and for the additional considerations discussed in the Court's memorandum opinion filed herewith,

**IT IS HEREBY ORDERED THAT** the Report and Recommendation is **ADOPTED IN PART** as follows:

1. All claims against Defendants Adams County Sheriff Department, Adams County Domestic Relations Office, Adams County Adult Correctional Complex, Sgt. Heinzelman, Warden Clark, Jane Doe Domestic Relations, and Emily Coolbaugh are **DISMISSED**.

2. Harris's failure to intervene and state medical negligence claims against Defendant Nurse Deb are **DISMISSED**.

3. The motions to dismiss are otherwise **DENIED**.

4. The above-captioned case shall be **REMANDED** to Magistrate Judge Smyser for further proceedings.

    S/ Yvette Kane
    Yvette Kane, Chief Judge
    United States District Court
    Middle District of Pennsylvania